IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JAMAL TURNQUEST,                    :    CRIMINAL ACTION
                                    :    NO. 07-737-02
            Petitioner,             :
                                    :    CIVIL ACTION
      v.                            :    NO. 14-50
                                    :
UNITED STATES OF AMERICA,           :
                                    :
            Respondent.             :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                           May 19, 2014


        Petitioner Jamal Turnquest is a federal prisoner
incarcerated at Federal Correctional Institute Allenwood in
Union County, Pennsylvania. Turnquest filed a pro se petition
under 28 U.S.C. § 2255 to vacate, set aside, or correct his
sentence, claiming that he received constitutionally ineffective
assistance of counsel on appeal. For the reasons set forth
below, the Court will deny the motion with prejudice, without an
evidentiary hearing.


I.    BACKGROUND

        On June 2, 2009, a jury convicted Turnquest of one count
of conspiracy to distribute five kilograms or more of cocaine
and fifty grams or more of crack cocaine, in violation of 21
U.S.C. §§ 846 and 841(a)(1), (b)(1)(A). That conviction arose

from Turnquest's participation in an organized drug manufacturing and distribution organization that operated in parts of Philadelphia and in Cecil County, Maryland. In total, Turnquest and seventeen other coconspirators were indicted for various drug crimes committed in the course of the conspiracy. The government's evidence at trial suggested that, during the period in which he was involved in the operation, Turnquest served as the principal manager of the conspiracy and as the "right hand man" to coconspirator Kareem Smith, who was the head of the conspiracy throughout its entire duration.

Turnquest was sentenced on August 10, 2010, to 264 months' imprisonment, five years of supervised release, a $1,000 fine, and a special assessment of $100. He appealed his conviction and sentence, arguing that the evidence was insufficient to sustain his conviction, and that the District Court erred in applying a three-level enhancement to his offense level for having a managerial role in the conspiracy. The Third Circuit affirmed the judgment of the District Court, and, on January 7, 2013, the Supreme Court denied Turnquest's petition for a writ of certiorari. See Turnquest v. United States, 133 S. Ct. 916 (2013); United States v. Turnquest, 497 F. App'x 155 (3d Cir. 2012). Turnquest subsequently filed a timely § 2255 petition, which is now ripe for resolution. See ECF Nos. 953, 956.

## II.  LEGAL STANDARD

A federal prisoner "claiming the right to be released . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255. Such a prisoner may attack his sentence on any of the following grounds: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; or (3) the sentence was in excess of the maximum authorized by law. Id. An evidentiary hearing on the merits of a prisoner's claims is necessary unless it is clear from the record, viewed in the light most favorable to the petitioner, that he is not entitled to relief. Id. § 2255(b). The court is to construe a prisoner's pro se pleading liberally, Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), but "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation," United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000).

A § 2255 petition can be based upon a violation of the Sixth Amendment right to effective assistance of counsel. See Strickland v. Washington, 466 U.S. 668, 686, 697 (1984). By claiming his counsel was ineffective, a defendant attacks "the fundamental fairness of the proceeding." Id. at 697. Therefore, as "fundamental fairness is the central concern of the writ of

3

habeas corpus," "[t]he principles governing ineffectiveness should apply in federal collateral proceedings as they do on direct appeal or in motions for a new trial." Id. Those principles require a convicted defendant to establish both that (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. Id. at 687; Holland v. Horn, 519 F.3d 107, 120 (3d Cir. 2008).

To prove deficient performance, a petitioner must show that his "counsel's representation fell below an objective standard of reasonableness." Id. (quoting Harrington v. Richter, 131 S. Ct. 770, 787 (2011)). The court's "scrutiny of counsel's performance must be highly deferential." Douglas v. Cathel, 456 F.3d 403, 420 (3d Cir. 2006) (quoting Strickland, 466 U.S. at 689). Accordingly, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Grant v. Lockett, 709 F.3d 224, 234 (3d Cir. 2013) (quoting Strickland, 466 U.S. at 689). In raising an ineffective assistance claim, the petitioner must first identify the acts or omissions alleged not to be the result of "reasonable professional judgment." Strickland, 466 U.S. at 690. Next, the court must determine whether those acts or omissions fall outside of the "wide range of professionally competent assistance." Id.

To prove prejudice, a convicted defendant must affirmatively prove that the alleged attorney errors "actually had an adverse effect on the defense." Id. at 693. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

## III. DISCUSSION

In his § 2255 petition, Turnquest asserts one ground for relief: that his appellate counsel was ineffective for failing to raise a claim that the District Court erred in applying a two-point enhancement to his offense level under U.S.S.G. § 2D1.1(b)(1). Pursuant to § 2D1.1(b)(1), a defendant's offense level is increased by two levels if "a dangerous weapon (including a firearm) was possessed." Turnquest says that, had his appellate counsel raised that issue on appeal, there is a reasonable probability that the Third Circuit would have vacated his sentence and remanded the case to the District Court for resentencing.

Turnquest and the government largely agree on the legal standard governing the applicability of the dangerous weapon enhancement. The commentary to the Sentencing Guidelines

explains that the enhancement "should be applied if the weapon
was present" during the drug offense, "unless it is clearly
improbable that the weapon was connected with the offense."
U.S.S.G. § 2D1.1 cmt. n.11(A). Furthermore, U.S.S.G. §
1B1.3(a)(1)(B) provides that a coconspirator is to be held
accountable for "all reasonably foreseeable acts . . . that
occurred during the commission of the offense of conviction."
See also United States v. Johnson, 199 F.3d 123, 127 (3d Cir.
1999) ("Sentencing adjustments may include all reasonably
foreseeable acts and omissions in furtherance of the jointly
undertaken criminal activity.") (internal quotation marks
omitted). As a result of those two provisions, a defendant is
eligible for the dangerous weapon enhancement if a coconspirator
possessed a firearm in furtherance of the jointly undertaken
offense, and that conduct was reasonably foreseeable to the
defendant. See United States v. Mack, 78 F. App'x 171, 182 (3d
Cir. 2003) (not precedential) (applying that standard to the
application of § 2D1.1(b)(1)); United States v. Bellitti, 45 F.
App'x 134, 136 (3d Cir. 2002) (not precedential) (same).

    Turnquest does not dispute that his coconspirators often
carried guns when involved in drug transactions that were part
of the conspiracy that is Turnquest's offense of conviction. See
Mem. Supp. Pet. 6, ECF No. 953, at 19 (acknowledging that "co-
conspirators David Spratt and Kareem Smith testified to their

own possession of a weapon, and weapons were seized during the conspiracy and it was not clearly improbable that a weapon was connected to the offense"). His contention is that those instances of gun possession were not reasonably foreseeable to him, and that the Court erred in applying the enhancement without properly considering the question of reasonable foreseeability. See id. at 7.

But, contrary to Turnquest's assertion, the Court considered and rejected precisely this argument at the time of sentencing. Indeed, the Court discussed reasonable foreseeability at length and expressly found that "it was reasonably foreseeable that weapons would be part and parcel of the extensive drug trade that was involved in this case." Tr. Sentencing Hr'g 37. That finding was based on evidence presented at trial that (1) Turnquest's coconspirators frequently carried firearms; (2) firearms were an intrinsic part of the operation, and are known to be "tools of the trade" of narcotics enterprises generally; and (3) Turnquest was heavily involved and had a managerial role in the operation at issue. In light of that evidence, the Court concluded that Turnquest was eligible for the dangerous weapon enhancement because his coconspirators possessed firearms in furtherance of the conspiracy, and that conduct was reasonably foreseeable to Turnquest.

7

That conclusion is uniformly supported by case law from this circuit. In United States v. Bellitti, the Third Circuit upheld the district court's application of the enhancement because the defendant "had a managerial role in the drug conspiracy" and because "firearms are the 'tools of the trade' for drug dealers, especially in large-scale transactions." 45 F. App'x at 136. Similarly, in United States v. Mack, the court held that firearm possession was reasonably foreseeable to the defendant because of the defendant's involvement in the overall organization, evidence showing that the organization stockpiled weapons and ammunition, and the fact that firearms are generally present in large drug operations. 78 F. App'x at 182-83. Like the defendants in those cases, Turnquest was heavily involved in a large-scale drug operation that often utilized firearms in furtherance of its activities, and he therefore could reasonably have foreseen that firearms would be possessed by his coconspirators in furtherance of his offense of conviction.

The cases Turnquest cites to in support of his petition are not to the contrary. In United States v. Gallo, the Eleventh Circuit simply made clear that reasonable foreseeability is an element that must be proven in order to hold a defendant accountable for a coconspirator's possession of a firearm. 195 F.3d 1278, 1281-84 (11th Cir. 1999). As for United States v. Vold, in that case the Seventh Circuit emphasized that "the mere

8

risk involved in a drug manufacturing conspiracy" is not enough, standing alone, to establish "the reasonable foreseeability of a concealed firearm." 66 F.3d 915, 921 (7th Cir. 1995). But here, there was evidence beyond simply the scale of the drug operation that established reasonable foreseeability – namely, the particular role that guns played in the operation and Turnquest's level of involvement in the operation overall.

In this case, the Court's application of the dangerous weapon enhancement was based on an explicit finding of reasonable foreseeability that was supported by the evidence and was consistent with existing precedent. Accordingly, appellate counsel's decision not to pursue that claim on appeal did not fall below an objective standard of reasonableness, as the claim was unlikely to succeed. For the same reason, Turnquest has not established that he suffered any prejudice as a result of his counsel's decision. A district court's factual finding that a dangerous weapon was possessed in connection with an offense is reviewed for clear error, making it highly unlikely that the Third Circuit would have reversed the Court's decision to apply the enhancement. See United States v. Irvin, 369 F.3d 284, 286 & n.2 (3d Cir. 2004) (explaining that the factual findings supporting a district court's application of an offense level adjustment are reviewed "only for clear error"). Turnquest has

therefore failed to satisfy either prong of the Strickland
standard, and his petition must be denied.

## IV.   CERTIFICATE OF APPEALABILITY

When a court issues a final order denying a § 2255
motion, it must also decide whether to issue a certificate of
appealability. Such a certificate "may issue . . . only if the
applicant has made a substantial showing of the denial of a
constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner
satisfies this standard by demonstrating that jurists of reason
could disagree with the district court's resolution of his
constitutional claims or that jurists could conclude the issues
presented are adequate to deserve encouragement to proceed
further." Pabon v. Mahanoy, 654 F.3d 385, 393 (3d Cir. 2011)
(quoting Miller-El v. Cockrell, 537 U.S. 322, 327 (2003)). Here,
Turnquest has not made such a showing, as the ground for relief
he raises can be readily resolved without an evidentiary
hearing. The Court therefore declines to issue a certificate of
appealability.

## V.   CONCLUSION

For the foregoing reasons, the Court will deny and
dismiss with prejudice Petitioner's motion to vacate, set aside,
or correct his sentence. An appropriate order follows.